# CIRCUIT COURT OF FAIRFAX COUNTY

Monique Lee

v.

Kaiser Foundation
Health Plan of the
Mid Atlantic States et al.

August 17, 2004

Case No. (Law) 218277

BY JUDGE KATHLEEN H. MACKAY

This matter came before the Court on Friday August 13, 2004, on Plaintiff's motion to exclude Defendants' expert witness, Dr. Rebecca Zuurbier. As previously stated from the bench, Plaintiff's motion is granted. I am writing this letter opinion to more fully explain that result.

Plaintiff's motion arises from an unusual set of facts. This is a medical negligence case, in which Plaintiff alleges that the Defendants were negligently tardy in diagnosing her breast cancer. A crucial issue in the case will be interpretation of mammograms taken prior to Plaintiff's diagnosis.

In January of this year, defense counsel contacted Dr. Zuurbier, a radiologist specializing in mammogram interpretation, seeking her advice in this matter. Defendants formally retained Dr. Zuurbier as an expert witness in February. In May, Plaintiff's counsel contacted Dr. Zuurbier, also seeking her assistance in this case. The doctor apparently did not recognize that she was already involved in this case, and, as a result, she discussed the matter extensively with Plaintiff's counsel. In a document submitted under seal, Plaintiff's counsel recites the details of his

conversation with Dr. Zuurbier. The discussion began with her interpretation of the mammogram films, but then developed into a comprehensive review of the merits and weaknesses of Plaintiff's case. Dr. Zuurbier also indicated a willingness to testify on Plaintiff's behalf. The doctor was remunerated for the consultation. Plaintiff ultimately did not retain Dr. Zuurbier. On July 22, however, she was designated an expert witness by Defendants, leading to the instant motion.

. The crux of this dispute is that Dr. Zuurbier has engaged in detailed conversations concerning this case with counsel for both parties; she has heard and opined on their trial strategies and become privy to their confidential information. In an affidavit, the doctor claims not to recall meeting Plaintiff's counsel and to have no recollection of their discussion. That, however, does not resolve the issue. While Dr. Zuurbier does not presently recall the conversation, it is likely that, at trial, upon being reacquainted with Plaintiff's counsel, some memory will stir. The Court can only imagine the confounding effect on the jury of Plaintiff's counsel cross-examining Dr. Zuurbier. What would the jury make of her being asked to explain her previously favorable opinion of Plaintiff's case and the remuneration she received for giving it?

The Supreme Court of Virginia has adopted a two-part test to govern situations of this sort. A court must first determine whether it "was ... objectively reasonable for the first party who claims to have retained the expert witness to conclude that a confidential relationship existed between that party and the expert. . . ." Next, it must ask whether "the first party disclosed any confidential or privileged information to the expert witness?" Turner v. Thiel, 262 Va. 597, 601 (2001). The party seeking disqualification bears the burden of proof on both issues.

In Turner, the Supreme Court found that the first prong was satisfied when "Sanders [the expert] reached an agreement with plaintiff's counsel whereby plaintiff's counsel provided information to Sanders, Sanders evaluated that information, and Sanders discussed his evaluation with plaintiff's counsel." In addition, the plaintiff had paid Sanders for his work in the case. Moreover, the Court noted that its analysis was unaffected by the expert's having forgotten the consultation, as the crucial issue was whether counsel thought a confidential relationship had been established.[1]

---

[1] In *Turner*, the expert had billed the Plaintiff for two hours spent reviewing the case, and twenty minutes spent discussing it with Plaintiff's counsel. The consultation occurred seven months

In this case, it is evident that Plaintiff's counsel approached Dr. Zuurbier for her assistance; the doctor reviewed the mammogram films and then entered into an extensive conversation with counsel regarding her reading of the films and of the case in general. Dr. Zuurbier was paid for her work and expressed a willingness to testify on Plaintiff's behalf. Plaintiff's counsel was justified in thinking that a confidential relationship existed between himself and the doctor.

The Turner Court held that the test's second prong could be satisfied by disclosure of "a party's strategies in litigation, the kinds of experts that the retaining party expected to employ, a party's views of the strengths and weaknesses of each side's case, the role of each of the litigant's expert witnesses to be hired, anticipated defenses, counsel's theory of the case, and counsel's mental impressions." Turner, at 603. Plaintiff's counsel has represented to the Court, in the sealed document, that this is precisely the sort of information he provided Dr. Zuurbier in this matter.

Turner's applicability to this case is, therefore, apparent. The issue is muddied only by the fact that Defendants contacted Dr. Zuurbier first. Although Defendants view this difference as dispositive and urge the Court to deny Plaintiff's motion, it is far from clear that that would be a proper result. The primary concern in Turner was not to protect the trial preparations of the first party to contact a particular witness, but, rather, to protect the sanctity of confidential information. The Turner test is unconcerned with mere timing; it does not investigate which party contacted a witness first.[2] Instead, its focus is confidentiality: whether a confidential relationship was established, and whether confidential

---

before the expert was retained by opposing counsel. The expert had no memory of discussing trial strategy with Plaintiff's counsel and claimed to have retained no confidential information.

[2] Courts considering disqualification have noted that disqualification of experts may create an incentive for parties to taint previously retained witnesses by contacting them. *See, e.g., Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (1991). There is, however, no suggestion of such behavior in this case. If anyone is at fault, it can only be the witness, who failed to determine whether she was involved in the matter before proceeding to evaluate Plaintiff's case.

information was shared in reliance upon that relationship.[3] In this case, both questions must be answered affirmatively and Plaintiff's motion granted.

---

[3] The centrality of confidentiality to this analysis is reiterated by *Wright v. Kaye*, which applied a similar test to the issue of affiliated witnesses who testify for opposing parties. 267 Va. 510, 526 (2004) (" the test for disqualification still revolves around the transfer of confidential information," citing *In re Malden Mills Indus., Inc.*, 275 B.R. 670, 673 (Bankr. D. Mass. 2002)).